fence.' So far as we can gather from the evidence, in their present location they do as little injury to the farm as if placed anywhere else along the side of the road, and certainly far less than if they had been erected strictly as stipulated in the agreement.

The animus of the plaintiff's action may be found in his statement that the defendant was to pay for these trees, although their destruction or serious injury was not within the contemplation of the parties when the permit was granted. The judgment should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment reversed, and a new trial granted, with costs to the appellant to abide event. 'All concur, except WILLIAMS, J., who dissents.

---

(121 App. Div. 112)

# In re STRANG.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

**1. WILLS—RESTRICTIONS ON GIFTS TO CHARITIES.**

In determining whether the will of one who died leaving a wife gives to charities more than one-half of his estate after payment of debts, in contravention of Laws 1860, p. 607, c. 360, a life estate given to the wife should be treated as a legacy, the same as the amounts given to charities and other legatees.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 36, 37.]

**2. SAME—COMPUTATION OF VALUE OF CHARITABLE LEGACIES.**

So, in arriving at the value of gifts to charities, the present value of the life estate, together with the other noncharitable legacies, should be deducted from the total estate, and the balance only represents the value of the gifts to charities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 36, 37.]

Appeal from Surrogate's Court, Livingston County.

In the matter of the judicial settlement of the accounts of John R. Strang, as trustee of the will of Nelson B. Slayton. From a decree providing for the distribution of the estate, there were appeals. Modified and affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

L. W. & A. B. Widdecombe, for Frank Slayton trustees.
George B. Adams, for Board of Home Missions.
Lockwood R. Doty, for Strang, trustee.
Lewis C. O'Connor, for Frank Wells.
John B. Abbott, for Frank Slayton.

WILLIAMS, J. The decree should be modified to conform to the views expressed in this opinion, and, as modified, affirmed, with costs to the Board of Home Missions, to be paid from the estate.

Numerous questions are raised on this appeal, and all of them have been disposed of in accordance with an opinion written by the surrogate. He seems to have arrived at correct conclusions with a single exception, which alone will be considered here. This question is whether the gifts to charitable institutions aggregated more than

one-half of the estate, in contravention of chapter 360, p. 607, of the Laws of 1860. This point was but little discussed by the surrogate in his opinion, and was somewhat obscured by counsel in their presentation of it upon this appeal. It seems to us, however, when clearly stated and understood, to be very simple. There is no evidence contained in the record. We must therefore rely upon the will and the findings for the facts upon which to base a statement of the matter.

Assuming that the estate amounted to $25,910, and that after giving a life estate therein to the widow there was given to charities $14,-910, and to other legatees $11,000, it should be remembered that the widow in fact realized nearly $20,000 from her life estate. When the testator died, it could not be known the widow would live so long. She was then 63 years old, and lived nearly 20 years thereafter. Her expectancy of life, under the Northampton Tables, which were then in force, was, however, only 7.742 years, and the value of her life estate, estimated upon such expectancy, was only about $10,000. Of this amount $5,700 came from the amount given to charities, and $4,300 came from the amounts given to other legatees. The life estate given to the widow was a legacy, a gift, under the will, the same as the amounts given to charities and other legatees. Charities and other legatees than the widow were not given the whole $25,910, but only what was left after the widow's life estate was taken therefrom. So that the figures should be stated as follows: Assuming the whole estate was $25,910, the life estate to the widow was $10,000, the gifts to charities, subject to the life estate, were $9,210, and the gifts to other legatees, subject to the life estate, were $6,700. These figures are not precisely correct, but they are near enough to illustrate the condition of things, and they show clearly that the gifts to charities aggregated much less than one-half of the estate.

The surrogate seems not to have considered the life estate given to the widow as a legacy. In this we think he was wrong. The life estate was a part of the estate of the testator, and it proved to be a very valuable part, amounting before her death to nearly $20,000. The gifts to charity and the other legacies were not of the amounts stated in figures, but these amounts less the life estate of the widow therein. There were no children in this case, and the effect of the statute was to protect the widow alone. Suppose there had been no other legatees, except the widow and the charitable institutions, and that the $11,000 given to other legatees had been given to the widow, in addition to her life estate in the charitable gifts; could it then be claimed that more than one-half of the estate had been given to charities? Her life estate in the gifts to charities would have been worth, by the Northampton Tables, $5,771.66, and her other legacies $11,000, while charities would have $14,910, less value of widow's life estate, $5,771.-66, or $9,138.34; total $25,910. Certainly the gifts to charities would not then have been more than one-half the estate. The whole question turns upon the nature of the gift to the widow of the life estate. Was it a legacy of a part of the estate, to be considered with the other noncharitable legacies in arriving at the conclusion as to whether more than one-half of the estate was given to charities? Were the amounts given to charities and other legatees the amounts stated in

the will in figures, or those amounts less the then present value of the widow's life estate therein?

The view we have taken is supported, not only by reason, but by authority also. Hollis v. Drew Theological Seminary, 95 N. Y. 167. In this case it was held that where a will directed the executors to convert the bulk of the estate into money, to invest the same, and to pay the income of different portions thereof to certain persons named during their lives, respectively, and upon their deaths gave the principal sums to certain scientific and educational corporations, in determining whether the statutory limit had been exceeded, the value at the time of the testator's death of the portion of the estate so disposed of should be ascertained, and from this should be deducted the values of the life estates, computed according to the proper annuity tables, and the balance represented the value of the remainders given to the corporations, and, this being less than one-half of the value of the estate at the time of the testator's death, the bequests were valid. The opinion in that case in various terms illustrates this principle, and clearly indicates that, in arriving at the values of the gifts to charities in a case like this, the present value of life estates must be deducted, and only the balance, after such deduction is made, is the value of the gift to charities. Any attempt to distinguish that case so as to avoid this principle, as applicable to this case, we think must fail. The case has never been questioned or overruled, and must be regarded as controlling here.

If we are right in the views herein expressed, no figures can be derived from the findings made by the surrogate that will make it appear that the gifts to charities were more than one-half of the testator's estate as valued at his death. Counsel will be able to agree upon the details of the modification of the decree necessary to carry these views into effect.

Decree of Surrogate's Court modified in accordance with opinion, and, as so modified, affirmed, with costs of this appeal to the Board of Home Missions, payable out of the estate. All concur.